REYNOLDS *v.* HENRY.

4-7610 187 S. W. 2d 167

Opinion delivered April 30, 1945.

*A. D. Chavis,* for appellant.

MILLWEE, J. Appellee, Ida Henry, instituted ejectment proceedings in the Jefferson circuit court against Freeman Reynolds and Lula Reynolds, his wife, for the possession of approximately one acre of land in Jefferson county, Arkansas. The parties are negroes and the prop-

erty in dispute is located in a colored settlement near the city of Pine Bluff. In her complaint appellee alleged that she was the owner and entitled to the possession of the land, having obtained title thereto in 1930 by deed from Sarah Glover; that she had paid taxes thereon for the years 1930 to 1942, and had never executed any conveyance of the property; that appellants were in possession of the property without color of title, had made improvements thereon and had refused to deliver possession thereof to appellee after demand. Appellee prayed judgment for possession of the property and for recovery of the improvements placed thereon by appellants.

In their answer appellants denied ownership of the lot by appellee and claimed title thereto by quitclaim deed from A. D. Chavis. It was further alleged that appellee had executed a quitclaim deed to the property to A. D. Chavis in July, 1935, for his services for representing appellee in the municipal court of Pine Bluff, on a charge of disturbing the peace and insanity; that A. D. Chavis agreed to hold the deed for one year when it would be returned if the attorney's fee were paid, if not the deed to become absolute; that said deed was never recorded, but was lost and appellee agreed to execute another deed to A. D. Chavis for a consideration of $10 which Chavis paid appellee on October 16, 1943, but appellee refused to execute the deed or return the $10. Appellants prayed that the cause be transferred to chancery court and for specific performance of the alleged contract of appellee to execute another deed to Chavis of the disputed property.

The cause was transferred to chancery court where it proceeded to trial and a decree was entered awarding title and possession of the property to appellee upon payment of $125 to appellants for improvements placed upon the property under color of title. The court further found that appellee was the record owner of the property and had paid taxes continuously thereon from 1930 to 1942, inclusive; that appellants in good faith contracted to purchase the property in November, 1942, from A. D. Chavis, who represented to appellants that he owned

the same, when in fact he did not; that appellants received a deed from A. D. Chavis in July, 1943, and made improvements of the value of $125 for which they should be reimbursed. Title to the property was quieted and confirmed in appellee subject to the lien of appellants for the improvements, and appellee was allowed 20 days in which to pay said lien. It was further provided that if appellee failed to discharge the lien for improvements within 20 days, a commissioner should be appointed to sell the property to pay the costs of sale, the sum of $125 to appellants, and any residue to appellee. Appellants prosecute this appeal from the decree.

It is insisted that the chancellor erred in refusing to decree specific performance of an alleged agreement by appellee to execute a duplicate deed to A. D. Chavis for $10, and that the decree on this issue is against the preponderance of the evidence. But, according to the rule established by our decisions, the quantum of proof required to decree the specific performance of a parol agreement for the conveyance of lands must exceed a mere preponderance of the testimony. The rule in such cases is that the evidence of such agreement must be so clear and convincing as to be substantially beyond doubt. *Williams* v. *Williams,* 128 Ark. 1, 193 S. W. 82; *Walk* v. *Barrett,* 177 Ark. 265, 6 S. W. 2d 310.

Appellants first went into possession of the property under a deed from A. D. Chavis in November, 1942, and erected a house thereon in 1943. The first deed did not accurately describe the property and A. D. Chavis executed another deed in July, 1943. Appellants now seek specific performance of an agreement alleged to have been made by appellee with appellant's grantor, A. D. Chavis, on October 16, 1943, several months after appellants went into possession and made improvements under their quitclaim deeds from A. D. Chavis. The testimony upon the issue of whether or not appellee agreed to make a duplicate deed to A. D. Chavis or whether she executed a deed in 1935 as claimed by A. D. Chavis is in sharp dispute.

A. D. Chavis testified that he represented appellee in municipal court on a charge of disturbing the peace

and insanity in 1935 and appellee gave him a deed to the property which he agreed to hold until she paid the $25 fee; that the fee was never paid and he misplaced the deed; that when appellants wanted to buy the property he wrote appellee several letters and she finally came to see him on October 16, 1943, and agreed to execute another deed for $10; that he did not have time to draw the deed but wrote out a receipt for the $10 payment which she signed by mark, and appellee agreed to come back next week and execute the deed; that she came back the following week but refused to sign a deed or to return the $10 payment. On cross-examination, A. D. Chavis testified that he did not bring a suit against appellee for specific performance of the alleged agreement to execute a duplicate deed because "there wasn't enough involved." He also testified that he knew he had nothing more than an equitable mortgage upon the property when he executed the deeds to appellants in November, 1942, and July, 1943, for $25.

Appellee acquired the property by deed from an aunt, Sarah Glover, in 1930. She testified that she had paid taxes on the property continuously since 1930 and receipts for such payments from 1936 to 1942, inclusive, were introduced. When she went to pay the taxes for 1943, she was told by the sheriff that appellants had already paid taxes for that year. She then learned that appellants had built a house on the property and appellant, Lula Reynolds, told her that appellants had bought the property from Mr. Chavis. She then went to Mr. Chavis and asked him why he sold her lot and told him the land belonged to her, but he said he had the oldest claim on it. She explicitly denied the execution of the deed to Mr. Chavis in 1935 or any agreement to make a duplicate deed at a later date.

The case of *Hall* v. *Harris*, 135 Ark. 586, 206 S. W. 36, is cited by appellants in support of their contention that the chancellor erroneously refused to decree specific performance of the agreement alleged to have been made by appellee with Mr. Chavis. In that case, the appellant sought specific performance of an alleged gift of land

from her father. There, as here, the evidence was highly conflicting and this court in an opinion by Mr. Justice Wood said: "The issues as to whether the appellee made an oral gift of the land in controversy to appellant, Lou Hall, and whether or not appellants, in pursuance of such, took possession and made substantial and valuable improvements thereon, are purely issues of fact. The law applicable to such cases where specific performance is prayed is declared by this court in *Young* v. *Crawford*, 82 Ark. 33, 100 S. W. 87, where we held: 'Equity will not decree specific performance of a parol contract for the conveyance of land, unless the terms of the contract are clearly and conclusively proved.'"

The burden was upon appellants to establish the parol agreement of appellee to execute the deed to A. D. Chavis. It would serve no useful purpose to review all the testimony in detail. After a careful consideration of the evidence we cannot say the chancellor was in error in finding that it was insufficient to meet the rule of clarity and conclusiveness heretofore announced. The decree is in all things correct and is, therefore, affirmed.