Norma Sue Ellis Baker, Guardian, et al v. William Eugene Ellis et ux

4695                                                        432 S.W. 2d 871

Opinion Delivered October 28, 1968

*Thompson & Thompson* and *Dave E. Witt* for appellants.

*Martin, Dodds, Kidd, Hendricks & Ryan* for appellees.

LYLE BROWN, Justice.    Appellants were plaintiffs below.    They brought suit alleging a four-sixths interest in four lots in Little Rock and contended that their uncle, Eugene Ellis, owned the other two-sixths interest.    Appellee Eugene Ellis asserted full ownership on the theory that the record title in the name of plaintiffs' father was actually a trusteeship for Eugene's benefit. Alternatively, Eugene sought a lien for expenditures for improvements.    The trial court rejected Eugene's theory of trusteeship but granted his alternate prayer for a lien.    Mrs. Baker, guardian of the four children, appealed from the award of the lien.    There was no cross-appeal by Eugene.

The real parties in interest are four surviving children of Leonard Ellis (plaintiffs), and Eugene Ellis, defendant and surviving brother of Leonard Ellis.    In his will, Leonard devised the involved lots to Eugene provided Eugene outlived Leonard; otherwise, the lots would go to Leonard's wife.    In that will Leonard did not mention the minor plaintiffs.    He did make a nominal bequest to his other two children.    Absent being mentioned in the will, these four children claim their right to inherit each an undivided one-sixth interest.    They conceded that their uncle, Eugene, received the other two-sixths interest by virtue of the will.    Plaintiffs alleged the property not to be susceptible of division in kind and asked for a sale and division of the proceeds.    Eugene contended that the property was vacant when purchased in the name of Leonard; that the title was held for Eugene's benefit in Leonard's name because the latter had a credit rating; that Leonard raised the money to pay for the lots and the improvements subsequently placed thereon by Eugene but that Eugene repaid the advancements.

The finding of the trial court that Leonard did not hold the property in trust for Eugene is not before us. That is for the reason that Eugene elected not to appeal from that ruling.

The only question on appeal is whether Eugene's right to a lien for improvements can be justified in law and by the evidence. The undisputed testimony is to the effect that Leonard (now deceased), Eugene, and another brother, combined their labors in improving the lot, in razing other buildings for material, and in actually constructing the house. The lot was in Leonard's name; he obligated himself in the total sum of $6200 in raising finances for materials and construction; no other brother was asked to sign those loan commitments; and, by the terms of the will, Leonard expressed his individual ownership of the property by making provisions for its disposition. The facts of the case are that Eugene contributed his labor to construction and lived in the house for many years; the building was located on land to which Eugene had no semblance of color of title; and he at no time, during a ten-year period, made request of Leonard for any title or instrument of assurance. It is not uncommon, even for uneducated people, to ask for some written evidence of their interest.

One who believes himself to be the legal or equitable owner and improves the land of another, *under color of title,* can recoup the cost of the improvements. Ark. Stat. Ann. § 34-1423 (Repl. 1962). Color of title generally connotes an instrument which by apt words of transfer passes what purports to be a title but which is defective in form. *Teaver* v. *Akin,* 47 Ark. 528, 1 S.W. 772 (1886). Our record is void of evidence that any instrument of writing ever existed. The claimant, Eugene, simply relied on oral testimony that the lot was bought for him in Leonard's name and that payments made to the lender of purchase and construction money were made from funds which Leonard withheld from Eugene's wages. It may be significant that the fair rental value of the house was said to be $75 per month and at no time were the monthly payments equal to the rental value. It poses a reasonable deduction that Eu-

gene was actually paying rent instead of purchase money payments.

Reversed and remanded.