Don ACORD *v.* Elbridge A.J. ACORD and Merle Acord

CA 99-1145                                   19 S.W.3d 644

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered June 21, 2000

*Woolsey & Wilson*, by: *Bruce R. Wilson*, for appellant.

*Len W. Bradley*, for appellees.

WENDELL L. GRIFFEN, Judge.  Don Acord appeals the judgment of the Johnson County Chancery Court in which the court found that Mark Acord had a life tenancy in certain real property located in Johnson County and that appellant had a remainder interest in the property.  The judgment also awarded appellee Merle Acord $41,433.28 as reimbursement for monies spent to improve and pay property taxes on the property

that her deceased husband, appellee Elbridge Acord, held in joint life tenancy with Mark Acord. For appeal, appellant argues that the chancellor erroneously awarded appellee the value of the improvements she made as a life tenant and property taxes that were paid. Also appellant contends that the chancellor erred in applying the betterment statute. We hold that the chancellor's award to appellee for reimbursement of taxes and the value of improvements was clearly erroneous. Therefore, we reverse and remand for entry of an order consistent with our decision.

## Facts and Procedural History

On May 17, 1986, Joe Acord conveyed land situated in Johnson County, Arkansas, hereinafter referred to as the "Workman Place," to two of his sons, Harold Wayne Acord and Charley Don Acord.[1] The deed contained a reservation that the conveyance was "subject to life estates in favor of Elbridge A.J. Acord and Mark Elbridge Acord, joint tenants with right of survivorship."[2] The deed was filed for record on May 27, 1986. Joe Acord executed another warranty deed in May 1986 conveying a life estate to Elbridge A.J. Acord and Mark Acord for the same property. Subsequent to the May 1986 conveyance, Joe Acord executed a Correction Warranty Deed recorded May 31, 1988, to Elbridge and Mark

---

[1] The conveyance was for the following:

The East Half of the Northeast Quarter of the Southeast Quarter (E1/2 NE1/4) of Section Sixteen (16), Township Twelve (12) North, Range Twenty-five (25) West, containing 20 acres, more or less.

The East Half of the Southwest Quarter of the Southeast Quarter (W1/2 NE1/4 SE1/4) of Section Sixteen (16), Township Twelve (12) North, Range Twenty-five (25) West, containing 20 acres, more or less.

The East Half of the Southwest Quarter of the Southeast Quarter of Section Sixteen (16), Township Twelve (12) North, Range Twenty-five (25) West, containing 20 acres more or less.

The Southeast Quarter of the Southeast Quarter (SE1/4 SE1/4) of Section Sixteen (16), Township Twelve (12) North, Range Twenty-five (25) West, containing 40 acres more or less.

[2] Charley Don Acord and Elbridge Acord were brothers. Mark Acord is the son of Elbridge and Merle Acord. Harold Wayne Acord died, and his interest passed to appellant, Charley Don Acord.

Acord, as joint tenants with the right of survivorship, that covered the same land as the deed contained in the deed to Harold and Charley Acord.

After the Corrected Warranty Deed was filed, Elbridge and Mark Acord executed a quitclaim deed, dated June 4, 1997, in favor of Elbridge and appellee Merle Acord, his wife. The couple initially brought an action to partition the land, claiming that they owned an undivided 4/5 interest in it. Appellees later amended their complaint and asked the chancellor to reform the deeds or, alternatively, to reimburse them for money they had spent on improvements and taxes.[3]

Following a hearing, the chancellor set aside the quitclaim deed dated June 4, 1997, and vested title in the property to Mark Acord for life, with a remainder fee-simple interest to appellant. The chancellor then entered judgment against appellant for $41,433.28, which represented the fair market value of the improvements made by appellee on the land before appellant acquired any interest in it and reimbursement for real property taxes paid. It is from this judgment that appellant appeals.

### Appellant's Arguments

Appellant raises three arguments. First, he contends that the chancellor erred as a matter of law in awarding appellee the value of improvements made and taxes paid by her and her late spouse as life tenants of the property in question. Second, he argues that the chancellor erred in applying the Arkansas Betterment Statute to the dispute between the parties. Finally, appellant contends that the chancellor erred in calculating the value of the improvements.

Appellee responds that appellant is incorrect in his assertion that the chancellor found that appellee was a life tenant. She creatively asserts that because there was no evidence at trial that she held a life tenancy interest in her own right, the chancellor's award of improvements and reimbursement of taxes to her should not be considered in a life tenant context. Thus, she concludes that she is entitled to reimbursement for taxes and improvements made on the

---

[3] Elbridge A.J. Acord died while this matter was pending.

land. Alternatively, she argues that life tenants may recover for improvements on land, and that the betterment statute applies so long as she had a good-faith belief that she owned the property in question. Appellee states that the chancellor did not err in calculating the amount of the value of the improvements made on the land in question.

■ ■ Chancery decisions are reviewed *de novo* on the record. *See Bennett v. Hollowell*, 31 Ark. App. 209, 213, 792 S.W.2d 338, 341 (1990). This court does not disturb the chancellor's conclusions of law unless the chancellor's findings are clearly erroneous. *See* Ark. R. Civ. P. 52. Chancellors are in the best position to view the evidence presented at trial and assess the credibility of witnesses based on their demeanor and testimony. *See Duchac v. City of Hot Springs*, 67 Ark. App. 98, 104, 992 S.W.2d 174, 178 (1999). Although this court gives great deference to findings of fact by the chancellor due to the chancellor's superior position to determine credibility issues, it does not give such deference to matters of law, in that the chancellor stands in no better position to apply the law than this court. *See id.* at 104, 992 S.W.2d at 178. When we find that the chancellor misapplied the law and that, as a result, an appellant has suffered prejudice, we will reverse the erroneous ruling. *See id.*, 992 S.W.2d at 178.

*Improvements and Taxes Paid by Life Tenants*

The chancellor awarded appellee a judgment to reimburse her for improvements made to the land as well as taxes paid on the land by appellee and her husband while the couple resided on the land. The chancellor based his decision on the fact that appellee and her husband made substantial improvements to the land, including the construction of a dwelling house, outbuildings, clearing and landscaping. All of this was done with the appellant's knowledge and tacit consent.

■ Life tenants hold a limited, restricted interest in the estate. Although life tenants are required to keep the property in repair, they are not required to permanently improve it. *See Frazier v. Hanes*, 220 Ark. 765, 769, 249 S.W.2d 842, 845 (1952). Indeed, life tenants ordinarily are not compensated by remaindermen when they permanently improve the estate. *See Kelley v. Acker*, 216 Ark.

867, 871, 228 S.W.2d 49, 52 (1950). Therefore, a life tenant who makes improvements to the property, notwithstanding her knowledge of her interest in the property, does so at her own risk. *See Graves v. Bean*, 200 Ark. 863, 868-69, 141 S.W.2d 50, 53 (1940) (holding that because the life tenant was aware of the title she held, she could not make improvements that would impair the interest of the title in fee simple).

■ Section 26-35-301 of the Arkansas Code Annotated mandates that everyone is liable and has a duty to pay taxes on land "seized for life" every year. *See* Ark. Code Ann. § 26-35-301 (a)-(b) (Repl. 1997). This includes life tenants, who are charged with the responsibility of paying taxes on land. *See Hutchison v. Sheppard*, 225 Ark. 14, 17, 279 S.W.2d 33, 36 (1955). It also includes persons who live with a life tenant, rent free. *See Kelley v. Acker*, 216 Ark. 867, 872, 228 S.W.2d 49, 53 (1950). These persons are not entitled for reimbursement of taxes paid, and monies paid by them to discharge the obligations of the life tenant are considered gifts to the life tenant. *See id.*, 228 S.W.2d at 53.

There is no dispute that Elbridge Acord and his son Mark were originally granted a life tenancy with right of survivorship in 1986. The 1986 deed states on its face that the deed was "for their natural lives," and includes a clause stating as follows:

> *Limitations*: It is the purpose of this conveyance to convey a life estate unto both Elbridge A.J. Acord and Mark Elbridge Acord, for and during their natural lives. This conveyance is made on the condition that neither Elbridge A.J. Acord nor Mark Elbridge Acord, shall have the right to transfer, alienate, encumber or convey the hereinabove described lands.

The Correction Warranty Deed, recorded on May 31, 1988, purported to convey to Elbridge A.J. Acord and Mark Elbridge Acord and unto their heirs and assigns forever the same land involved in this appeal. However, the Correction Warranty Deed included the following limitation clause:

> this conveyance is made on the condition that neither Elbridge A.J. Acord nor Mark Elbridge Acord shall have the right to transfer, alienate, encumber or convey the hereinabove described lands.

During the trial, appellee testified as to her understanding of the interest that she and her husband held in the Workman Place.

Appellee testified that she and her husband received copies of the two 1986 deeds along with a letter from Joe Acord's attorney. In addition, appellee testified, "[W]e understood Joe intended for us to just have the right to live there. We were having trouble signing the deed. I said, '[D]on't put my name on it and Joe will sign it.' "

Appellee also testified that "we knew that all we had was the right to live there for Elbridge's and Mark's lifetime when we sold our property in Missouri." She testified that she thought a life estate meant that once her father-in-law died, the property would belong to her and her husband.

Appellee further testified that although she thought in 1987 that she and her husband had a life estate interest in the Workman Place, once the correction deed was recorded in 1988 she thought that she and her husband owned the land. Appellant testified she was in possession of the 1986 deed and the 1988 correction deed. She stated that she and her husband began constructing their home in 1991.

In addition to the testimony of appellee, the chancellor also heard the testimony of Don Acord and Jeffrey Levin. Both men testified that it was Joe Acord's intent to keep the property in the family to prevent it from being sold. Levin, the attorney who prepared the life estate conveyance testified that Joe Acord intended to avoid the selling of the property as a result of any marital problems that developed between Elbridge and appellee. Levin testified that he told Joe Acord that the only way to keep the property from being sold was to create a series of life estates, first in Elbridge Acord and then in Mark Acord. He stated that he sent a memo to Merle and Elbridge Acord dated May 5, 1986, which contained copies of the two 1986 deeds.

Appellee's name is absent on the 1986 and 1988 deeds. In fact, it is not until 1997 that appellee's name first appears on an instrument involving the property. This occurred when Elbridge and Mark Acord purportedly quitclaimed the property to Elbridge and Merle Acord.[4] During the trial, appellee testified that the purpose

---

[4] We note that Ark. R. Civ. P. 25(a)(2) provides that when a plaintiff dies in a pending action to recover real property or an interest in real property, the Court may substitute the personal representative, heirs, or assigns. It has not been argued on appeal that appellee stood in the shoes of her late husband, and as a result, gained any interest he had in

of the 1997 deed was for her to have a place to live.

■ As life tenants of the Workman Place, Elbridge and Mark Acord were required to pay taxes on the property. It is undisputed that appellee lived on the land with her husband, and received the benefit of living on the land rent-free. Thus, appellee is not entitled to reimbursement for taxes. As mentioned previously, life tenants ordinarily do not receive reimbursement from remaindermen when improvements are made to the estate. Life tenants who improve property notwithstanding the uncertainty of reimbursement assume the risk they will not be reimbursed. Appellee and her husband took this risk when they sold their home in Missouri, relocated to Arkansas, and built a home on the property knowing that Joe Acord only intended for them to live there for Elbridge and Mark Acord's natural lives.

### Application of the Betterment Statute

■ ■ A person may recover for improvements made to another's land under the Arkansas Betterment Statute, if she 1) believes herself to be the owner of the property; and 2) holds under color of title.[5] *See* Ark. Code Ann. § 18-60-213(a) (1987). A life estate interest does not confer color of title, and a deed that purports to be only convey a life estate is not sufficient color of title. *See Perry v. Rye*, 223 Ark. 594, 597, 267 S.W.2d 507, 509 (1954). In addition, a person may not recover for improvements that were made before color of title was acquired. *See Anderson v. Williams*, 59 Ark. 144, 146, 26 S.W. 818, 819 (1894).

---

the land. Even so, Elbridge Acord's interest was a life tenancy and nothing more. *See* Ark. R. Civ P. 25(a).

[5] The language of the statute reads as follows:

If any person believing himself to be the owner, either in law or equity, under color of title has peaceably improved, or shall peaceably improve, any land which upon judicial investigation shall be decided to belong to another, the value of the improvement made as stated and the amount of all taxes which may have been paid on the land by the person, and those under whom he claims, shall be paid by the successful party to the occupant, or the person under whom, or from whom, he entered and holds, before the court rendering judgment in the proceedings shall cause possession to be delivered to the successful party.

*See* Ark. Code Ann. § 18-60-213(a) (1987).

Appellee testified that she knew at the time she moved from Missouri in 1986 that she and her husband only had a right to live on the Workman Place for the life of her husband and son. Her testimony that she thought she and her husband owned the place in 1988 contradicted her testimony that the purpose of the purported 1997 quitclaim deed was for her to have a place to live.

Even if appellee thought she owned the property, she still had to hold the property under color of title. The 1986 deed conveyed by Joe Acord to Elbridge and Mark Acord stated on its face that it was a life estate with a limitation that neither Elbridge nor Mark had the right to transfer, alienate, encumber or convey the land. The 1988 Correction Warranty Deed, also conveyed by Joe Acord to Elbridge and Mark Acord, contained language that limited the grantees from transferring, alternating, encumbering, or conveying the Workman Place. The limiting language in both conveyances prevented creation of a fee simple interest.

Appellee was not a grantee in the 1986 deed or 1988 Correction Warranty deed, and her name does not appear on any instrument of conveyance until June 1997. Based on the absence of appellee's name from both the 1986 and 1988 deeds, appellee had no basis for a good-faith belief that she held the property under color of title at the time the improvements were made in 1991. Therefore, the chancellor erred in applying the betterment statute to appellee. Because the betterment statute is inapplicable to appellee, we need not reach the merits of appellant's argument that the chancellor's reliance on an appraisal was misplaced under the betterment statute.

The chancellor misapplied the law in awarding appellee a judgment against appellant. We reverse and remand for entry of an order consistent with this decision.

Reversed and remanded.

ROBBINS, C.J., STROUD and NEAL, JJ., agree.

KOONCE and BIRD, JJ., dissent.

K MAX KOONCE, II, Judge, dissenting. I respectfully dissent from the majority opinion in this case. Although I agree with the majority that this case should be reversed, I would

remand the case to the trial court to permit appellee to move for substitution of the proper parties pursuant to Ark. R. Civ. P. 25. The majority reverses the chancellor's decision on the basis that appellee is not entitled to the value of improvements or taxes because she has no interest in the land and never had any interest in the land. However, I believe the case should be remanded to allow appellee to substitute a proper party pursuant to Ark. R. Civ. P. 25 since her husband, who had an interest in the land at issue, died prior to the trial and would have been entitled to the taxes and value of the improvements under the betterment statute.

Appellant first contends that the chancellor erred in awarding appellees the value of the improvements to the land because they were not entitled to them based on Elbridge Acord's status as a life tenant. The Arkansas Supreme Court has held that a life tenant may not recover from the remaindermen the value of improvements made to the property during his tenancy. *Kelley v. Acker*, 216 Ark. 867, 228 S.W.2d 49 (1950); *Smith v. Stanton*, 187 Ark. 447, 60 S.W.2d 183 (1933). Although a life tenant is not entitled to the value of the improvements, Elbridge Acord would have been entitled to them under the betterment statute codified at Ark. Code Ann. § 18-60-213 (1987).

Appellant next contends that the chancellor erred in awarding appellees the value of improvements and taxes based on the betterment statute. As the majority opinion notes, the statute states in pertinent part as follows:

> (a) If any person believing himself to be the owner, either in law or in equity, under color of title has peaceably improved, or shall peaceably improve, any land which upon judicial investigation shall be decided to belong to another, the value of the improvement made as stated and the amount of all taxes which may have been paid on the land by the person, and those under whom he claims, shall be paid by the successful party to the occupant, or the person under whom, or from who, he entered and holds, before the court rendering judgment in the proceeding shall cause possession to be delivered to the successful party.

Ark. Code Ann. § 18-60-213(a). Under this section, one entitled to recover must meet the following tests: (1) he must believe himself to be the owner of the property; and (2) he must hold the property under color of title. *Tolson v. Dunn*, 48 Ark. App. 219, 223, 893

S.W.2d 354 (1995). The supreme court has stated that "color of title" connotes an instrument which, by apt words of transfer, passes what purports to be a title but which is defective in form. *Id.* (citing *Baker v. Ellis*, 245 Ark. 484, 486, 432 S.W.2d 871 (1968)). Black's Law Dictionary, 4th edition, defines "color of title" as "the appearance, semblance, or simulacrum of title; a writing on its face professing to pass title but which does not, either through want of title in the grantor or defective mode of conveyance."

As discussed by the majority, appellee Merle Acord testified that she and her husband received a copy of the 1986 deed from Joe Acord conveying a life estate in the property to Elbridge and Mark Acord. She stated that they moved from Missouri to the property at issue in 1987 and paid taxes on such until 1997. She stated they began to build a home on the property in 1991. Appellant, Don Acord, testified that he was aware appellees were building a home on the property but did not go to them and ask them to stop. Appellee Merle Acord also testified that they did not know about the 1986 deed to Harold and Don Acord until after the lawsuit was filed. She stated she knew that Joe Acord intended for them to just have the right to live on the property. She further testified that they thought a life estate meant they would receive the property when Joe Acord died. She stated that they thought they owned the land after the 1988 deed conveying the property to Elbridge and Mark Acord. Also, at that time they were still unaware of the 1986 deed to Harold and Don Acord conveying the fee estate.

The chancellor ruled in Merle Acord's favor, conclusively finding that she and her deceased husband, Elbridge Acord, honestly believed they were the owners of the property at issue and that they had color of title based on the 1988 deed purporting to convey Elbridge and Mark Acord fee simple ownership in the property. It should be noted that a deed conveying only a life estate is not sufficient color of title to bring the grantee of a life estate within the purview of the betterment statute. *Perry v. Rye*, 223 Ark. 594, 267 S.W.2d 507 (1954). However, the 1988 deed purported to convey a fee simple. The 1988 deed contained the following pertinent language:

> THAT I, JOE ACORD, . . . do hereby grant, bargain, sell and convey upon the following conditions, unto the said Elbridge A.J. Acord and Mark Elbridge Acord, and unto their heirs and assigns

forever, the following lands lying in the County of Johnson and State of Arkansas, to-wit:

[description of the property]

*Limitations:* This conveyance is made on the condition that neither Elbridge A.J. Acord nor Mark Elbridge Acord, shall have the right to transfer, alienate, encumber or convey the hereinabove described lands.

The purpose of this deed is to correct the warranty deed filed on May 21, 1986 at Book 186, Page 23, which erroneously limited the estates granted to Grantees hereinabove to life estates.

I believe that this deed, along with Merle and Elbridge Acord's honest belief that they owned the property subsequent to the 1988 deed, gave them color of title, bringing Elbridge Acord's claim for taxes and improvements within the purview of the betterment statute. As the majority states, appellant Merle Acord's name does not appear on the 1988 deed; however, Elbridge Acord's name does appear on the 1988 deed, and he would have been entitled to the value of taxes and improvements under the betterment statute had he not died prior to the hearing on the matter. Therefore, I believe that this case should be remanded to allow appellee to substitute the proper party pursuant to Ark. R. Civ. P. 25 and that the award of taxes and improvements should be awarded to the proper party based on the betterment statute.

For the reasons stated, I respectfully dissent. I am authorized to state that Judge BIRD joins in this dissent.